INTERNATIONAL & GREAT NORTHERN RAILWAY COMPANY v. HARRY B. REEVES.

Decided March 9, 1904.

**1.—Assigning Part of Cause of Action—Attorney—Liability for Costs.**
An attorney for a plaintiff, (having become the owner of a part of the cause of action by transfer before suit is brought, is not thereby liable, as a party to the suit, for security for costs.

**2.—Permanent Injuries—Mortality Tables—Evidence.**
Evidence held to show permanent injuries to a railway switchman warranting introduction of mortality tables as evidence.

**3.—Argument of Counsel—Improper Remarks—Withdrawal.**
Improper remarks by counsel to the jury, where withdrawn, held not ground for reversal.

**4.—Pleading—Raising Issue.**
Pleading and evidence held to properly raise the issue of negligence on the part of defendant in failing to keep appliances in repair.

**5.—Charge—Negligence—Issue Raised.**
A charge upon negligence which ignores the defense of assumed risk is not erroneous where it is not shown that there was any testimony raising this issue.

**6.—Pleading—Defective Car—Failure to Inspect.**
A petition alleging negligence of defendant in respect to furnishing a safe car embraced a negligent inspection or failure to inspect such car.

**7.—Verdict—Railway Switchman.**
Evidence considered and held to support a verdict of $7500 as not excessive, in the case of a railway switchman being thrown from the top of a moving box car by reason of a defective brake.

Appeal from the District Court of Wood. Tried below before Hon. R. W. Simpson.

*N. A. Stedman* and *Gould & Morris,* for appellant.

*H. D. Wood* and *Giddie & Harris,* for appellee.

JAMES, CHIEF JUSTICE.—Plaintiff Reeves, a switchman in appellant's employ, alleged his injury to have been occasioned by the latter's negligence in various forms, he being thrown from the top of a moving box car to the bottom of a coal car next to it, in the yards at Mineola, in the nighttime, while in the performance of his duties.

The verdict involves the findings of fact that plaintiff's injuries were due to defendant's negligence, that he was not guilty of contributory negligence, that his injury did not occur through the risks ordinarily incident to his employment, and such are necessarily our conclusions on this appeal.

The first assignment of error will be overruled. Although plaintiff's attorney may have become the owner of part of the cause of action, by transfer before the suit was brought, for his legal services, this did not entitle the court to treat him as a party for the purpose of giving security for costs. Galveston H. & S. A. Ry. Co. v. Mathes, 7 Texas Ct.

Rep., 172. A motion of this sort will prevail only against one who is in fact a party. It has been even held that errors in respect to such motion against a party become immaterial when the plaintiff recovers. Yoakum v. Mettasch, 26 S. W. Rep., 129. The motion was entitled to no respect as a pleading complaining of the nonjoinder of the attorney as a party, as it was not sworn to. It was simply a motion for one not a party to be required to give security for costs. Furthermore the transfer refers to the cause with Reeves as the plaintiff, and authorizes the attorney to do all things necessary in the prosecution or settlement of said cause, whether in or out of court. The transfer or contract properly construed authorized the attorney to prosecute the cause in plaintiff's name.

The second assignment complains of the use of mortality tables as evidence, there being, as appellant alleges, no evidence that plaintiff was permanently injured as regards his earning capacity.

Under plaintiff's testimony it was admissible for the jury to find that his earning capacity would be destroyed or impaired in the future, and for what time the result would probably extend. It was admissible, we think, for them to have found that the condition of impairment was permanent, and if this be so, the mortality tables were proper evidence.

All the testimony concurs that his leg, which was broken, is about an inch shorter than before and that he limps, but this does not appear to materially affect his capacity for work. Of his condition at the time of the trial, which was about eight months after the accident, after stating his intervening condition and sufferings, in which he was corroborated, he testified that his back hurts him yet; that he can not lie on his back over ten or fifteen minutes; that its hurts him to lie on his right side; that he can not have an action without taking medicine; that his sexual passion is completely destroyed; that he does not know whether he hurt his head or not; that it seems to him at times that he has not the right sort of sense; that he has to sleep with his leg straightened to be able to sleep at all; that he has pains in his back and sides and has to sleep on his left side mostly; that he was always healthy before the accident, and that he is now unable to perform any work.

The above indicates his injury to be of a serious nature involving his back or spine and nerves, which has continued for about eight months. This is some evidence that his injuries are permanent. It appears to be his settled condition. Upon such evidence it would not be error to submit to a jury whether or not this condition of a plaintiff was permanent. Louisville Ry. Co. v. Casey, 71 S. W. Rep., 876; Texas & P. Ry. Co. v. Davidson, 3 Texas Civ. App., 542.

If plaintiff's testimony was accepted with reference to his condition, which the jury had the right to do, this condition continued to exist at the time of the trial. It would naturally continue so for some period, and the jury were necessarily judges of what this period would be. The jury were authorized to find, in the wide discretion allowed then in

matters of this kind, owing to the impracticability of definite and certain proof on the subject, how long this condition would probably last. If they believed it would last indefinitely, what reason could be given for interfering with their judgment on this question of fact? Where would the court set the limit?

If physicians should all concur in testifying that the symptoms detailed by plaintiff showed a condition that was temporary or curable, we might in such a case feel authorized to hold that a finding that he was permanently disabled was against the weight of the evidence. But this is not the state of the medical testimony here. The physicians do not speak with any degree of certainty on the subject. Juries themselves have some knowledge of matters of common experience, such as injuries to the person, and to some extent are able to form opinions as to the results of such injuries as plaintiff described, and were not obliged to lay aside their own understanding and observation of such matters for the mere opinion or theories of physicians. In our opinion, because the jury in determining the length of time plaintiff's disability or impairment would probably continue, might have concluded that it would continue permanently, there was no error in admitting the tables.

Plaintiff's counsel in the closing argument stated that "the railroads had well nigh corrupted the virtue of the country." This ought not to reverse the judgment, inasmuch as the court stopped counsel and told him that the remark was improper and counsel stated to the jury that he withdrew the statement.

The fourth and fifth assignments relate to refused instructions which did not state the law. One of them would have told the jury unqualifiedly that if the defects complained of in the cars, tracks and premises were open and visible, plaintiff assumed the risk; the other, that if he could have known the presence of the coal car with which his car collided by reasonable diligence, to return a verdict for defendant.

The requested charge referred to by the sixth assignment was similarly erroneous, and should have been refused. But the court gave it with a qualification which was correct. The giving of the charge was an error favorable to defendant.

The seventh is not well taken. The point is that the pleadings and evidence raised no issue as to defendant's negligence in failing in repair the "racket and dog" on the car upon which plaintiff was engaged. There is no foundation for this allegation of error. The petition alleged that defendant negligently failed to furnish plaintiff a reasonably safe place to perform his duties in this (among other things), that the car on which plaintiff was riding was defective, unsafe, unsuitable and unfit for use in this: That the brake wheel and brake rod and the brake chain and racket or dog controlling the brake wheel were broken, defective and out of repair, so that the same failed to hold the brake when set or attempted to be set. Plaintiff testified: "I got up there to set the brake. It would set all right, but it would not hold. I tried it several times."

The eighth embodies this alleged error: The court in the seventh paragraph charged the jury to find for plaintiff if defendant was negligent in furnishing the racket and dog and plaintiff's injury was the direct and proximate result thereof, unless they found that plaintiff was guilty of contributory negligence. The objection is that this charge ignored the defense of assumed risk.

Appellant's brief does not state nor attempt to show that there was any testimony which raised an issue of assumed risk in reference to the "dog or racket" or the car upon which plaintiff was riding. This was necessary in order to make a showing of error.

The ninth alleges that there was no allegation nor evidence warranting the court in submitting the issue whether or not the car from which plaintiff fell was kicked at a dangerous rate of speed, and furthermore the charge (eighth and tenth paragraphs) assumed that a high and unnecessary rate of speed as was alleged in the petition, was a dangerous rate of speed. "A high and unnecessary rate of speed" is a sufficient allegation to warrant a finding of dangerous speed. The court did not assume that the speed was dangerous, but left it to the jury. The evidence conflicted as to the speed at which the car was kicked. Plaintiff testified that he could not tell how fast it was going as it was approaching him endwise, but he thought it was moving about its usual speed of about six miles an hour. Evidence that it was going ten or fifteen miles an hour was therefore evidence of unusual speed. Whether it was dangerous or not was for the jury. It was proper for the court to submit the issue of dangerous speed, as it was only in that respect that the speed of the car was material.

The question raised in respect to the tenth clause of the charge is, not that the charge was any manner incorrect in law, but that it was on an issue not in the case. The issue was involved in and affected the issue of contributory negligence. When contributory negligence is pleaded, plaintiff is entitled to have any matter affecting such question submitted. The statement in the brief is confined to showing that no issue involving that matter had been pleaded. Therefore the tenth assignment is overruled.

In reference to the eleventh assignment we find there was evidence in regard to inspection of the car from which plaintiff fell. Defendant's car inspector at Mineola testified that this was a foreign car, that they inspected foreign cars, and that he had not inspected this one prior to the accident because he had not received it. He testified they sometimes inspected sixty cars in a night. Defendant had this car in use at the time plaintiff was hurt. The charge was: "It is the duty of defendant to inspect its cars and all cars used by it, and a failure to use ordinary care to so inspect would be negligence, and you will look to all the facts and circumstances in evidence to determine whether defendant was guilty of negligence in failure to inspect said car before the injury." The petition charged negligence of defendant in respect to furnishing

a safe car, and this embraced a negligent inspection or a failure to inspect the car.   Therefore the objections to the charge are not well taken, viz., that the petition does not charge that failure to inspect was negligence; that there was no evidence on the subject, and no evidence that plaintiff was injured as the proximate result of such negligence.

The verdict was not contrary to the law nor contrary to the evidence, and from plaintiff's account of his injuries and suffering, he being 21 years of age, in good health and earning about $60 a month at the time of the injury, the verdict for $7500 was not excessive.

*Affirmed.*

Writ of error refused.