CHICAGO, R. I. & G. RY. CO. v. COSIO.
(No. 887.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 5, 1916. Rehearing Denied Jan. 26, 1916.)

1. ATTORNEY AND CLIENT ☜148—COMPENSATION—ASSIGNMENT OF CONTINGENT INTERESTS.

Where the attorney of an injured servant suing for damages was before the filing of the

petition assigned one-half the amount which might be recovered in the action, the attorney's interest was contingent upon collection, and was a mere assignment of funds to be collected.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 352, 353; Dec. Dig. ☜ 148.]

2. ASSIGNMENTS ☜129—NECESSARY PARTIES —NATURE OF INTEREST.

An attorney to whom was assigned a contingent interest in the amount to be recovered was not such an interested party as to require that he be made a party to the action or to make the petition which failed to make him a party subject to a plea in abatement for defect of parties.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 213–219; Dec. Dig. ☜129.]

3. MASTER AND SERVANT ☜256—INJURIES TO SERVANT — ACTIONS — PLEADING — SUFFICIENCY.

Where the petition of a servant seeking recovery for his injuries showed that the defendant was a railroad operating from Texas into New Mexico, and that the servant was employed in maintaining that line in repair, and where the answer alleged that the defendant was an interstate carrier, it was not necessary for the plaintiff to state that he brought his action under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1913, §§ 8657–8665]), since the facts alleged were sufficient without specific statement to show that it was brought under that act.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 809–812, 815; Dec. Dig. ☜256.]

4. MASTER AND SERVANT ☜284—INJURIES TO SERVANT — ACTIONS — PLEADING — QUESTIONS FOR COURT.

In a servant's action for injuries in operating a motor tool car on an interstate railway, it is a question for the court whether the injuries were received while employed in interstate or intrastate commerce, thereby determining whether state or federal laws shall control.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1000–1090, 1092–1132; Dec. Dig. ☜284.]

5. COMMERCE ☜27—INTERSTATE COMMERCE— FEDERAL EMPLOYERS' LIABILITY ACT.

Before recovery can be had under the federal Employers' Liability Act, it must appear first that the defendant railroad was engaged at the time in interstate commerce, and that the employé was injured while actually so employed.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. ☜27.]

6. WITNESSES ☜269—EXAMINATION—CROSS-EXAMINATION.

It is not error in a servant's action against the employing railroad to permit a witness to state that the track was uneven and rough and unballasted, where defendant had introduced him, and on direct examination had elicited the testimony that the road had no track rough enough to have caused plaintiff to lose his hold on the car with the resultant injury claimed, since that was proper cross-examination, and the testimony so elicited was material.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 949–954; Dec. Dig. ☜269.]

7. APPEAL AND ERROR ☜1050—REVIEW—EVIDENCE—HARMLESS ERROR.

Where a witness for defendant stated that defendant's track was a little rough all along the line, and that every day some part of the track would have to be raised, the error, if any, in admitting on cross-examination testimony that the track was not ballasted and was rough

in some places was harmless; the cross-examination being covered by the direct.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. ☜1050.]

8. WITNESSES ☜269—EXAMINATION—CROSS-EXAMINATION.

Where a servant of a railroad was injured in starting a gasoline motor car by pushing it until the engine started, and the defendant railroad introduced evidence as to the character of the car on the issue whether it had used due care in providing a reasonably safe instrumentality with which to work, it was not error to admit on cross-examination the testimony of the witness that the motor could have been equipped with a self-starter at a certain cost, although no pleading authorized the testimony.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 949–954; Dec. Dig. ☜269.]

9. APPEAL AND ERROR ☜758—SCOPE OF REVIEW — PRESERVATION OF EXCEPTIONS — BRIEF.

Where the brief on appeal does not show whether objections were interposed to the charges of the court complained of before or after submission to the jury, the assignments of error thereon must be treated as waived.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3093; Dec. Dig. ☜758.]

10. MASTER AND SERVANT ☜286—INJURIES TO SERVANT—LIABILITY OF MASTER.

It is the duty of the employer to furnish a reasonably safe implement for the work required, so that where a servant was injured by falling from a gasoline car which he attempted to start by pushing it, whether it was the duty of the company to furnish a car with a starting apparatus was a question for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. ☜286.]

11. TRIAL ☜260 — INSTRUCTIONS — SUFFICIENCY.

It is not error to refuse a requested instruction already substantially covered by the charge given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. ☜260.]

12. MASTER AND SERVANT ☜278—INJURIES TO SERVANT—LIABILITY OF MASTER—EVIDENCE.

Evidence in a railroad servant's action for injuries held sufficient to sustain a verdict for the plaintiff.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. ☜278.]

13. MASTER AND SERVANT ☜280—INJURIES TO SERVANT—LIABILITY OF MASTER—EVIDENCE—ASSUMPTION OF RISK.

Evidence in a railroad servant's action for injuries by falling from a gasoline motor car which he had attempted to start by pushing it held insufficient to show that he assumed the risk in attempting to board the moving car.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 981–986; Dec. Dig. ☜280.]

Appeal from District Court, Potter County; Hugh L. Umphres, Judge.

Action by Flaviano Cosio against the Chicago, Rock Island & Gulf Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

---

☜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

C. E. Gustavus, of Amarillo, and N. H. Lassiter, of Ft. Worth, for appellant. L. C. Barrett and Jas. N. Browning, both of Amarillo, for appellee.

HUFF, C. J. The appellee, Flaviano Cosio, brought this suit against the appellant railway company for damages for alleged personal injury. He alleges that the appellant railway company is a railroad corporation carrying passengers and freight for profit and hire over its line of road, which runs from Amarillo, Potter county, Tex., through Oldham county, Tex., to Tucumcari, N. M.; that the appellee was employed by appellant and engaged in building and repairing the defendant's road at and near a place called Vega, in Oldham county, and that appellant had motor cars for the purpose of carrying tools and material for repairing its road, which was required to be propelled along the road by the servants of appellant, and in propelling said car, and in carrying the tools and material, the appellee was engaged as the servant of appellant in such work at the time of his injury, and that, while so engaged, he attempted to mount the car, and was thrown therefrom and injured in the manner set out. The negligence alleged is that he was required to start the car by hand by pushing it for some distance until the motor by which the car was propelled was started, and that he was required to mount the car while in motion, and that he was so required by the direction of the foreman; that it at that time was loaded with certain tools, the handles of which were round, etc., and in getting on the car the tools turned so that his foot slipped and he fell. He also alleges that the track at that point was rough and uneven, and that the car struck a rough place and bounced as he stepped on the car, which contributed to the fall, and he also alleges that the appellant failed to warn him of the danger in getting on the car while in motion; that he was ignorant of the danger at the time and was wholly unacquainted with such work; that he was a Mexican, and not acquainted with the English language, and had had no experience in such matters; that all of said acts were negligence on the part of appellant and proximately caused his injury.

It will not be necessary at this time to set out the answer of the appellant. The case was tried to a jury on special issues, and upon their findings a judgment was rendered for appellee for $750.

[1] Under the first assignment, the contention is made that defendant's plea in abatement should have been sustained or L. C. Barrett should have been made a party. The plea in abatement set up that prior to the filing of the suit appellee conveyed to L. C. Barrett an undivided one-half interest in the cause of action, and that Barrett is therefore a necessary party plaintiff, and that the cause should be abated, unless Barrett was made a party plaintiff. The appellee filed a pauper's oath, and it was admitted on the trial below that Barrett was able to pay and secure the costs. L. C. Barrett, as attorney for appellee, filed this suit against appellant in the name of appellee for the damages alleged, and the record shows Barrett represented appellee as his attorney in the trial court, and that he is representing appellee in this court in such capacity. The bills of exception taken on this plea show that the original petition was filed August 21, 1914; that the transfer set up by the plea was filed with the papers of the cause on the above date. The transfer recites that appellee, on the date thereof, August 17, 1914, employed L. C. Barrett to represent him and to sue appellant for the injury negligently inflicted on appellee, and to compensate Barrett for his services in such suit he assigned and transferred one-half interest in the cause of action, as well as all moneys realized by compromise or otherwise; that it was understood that all proceedings in court or out of court should be carried on in the name of appellee. The appellee empowered Barrett to bring the suit and prosecute it to final determination, collect all moneys arising therefrom, to compromise, and sign all papers and receipts for all moneys, and, when collected, to pay over one-half to appellee. Appellee was to stand for all costs or make necessary arrangements by affidavit, if required therefor. This transfer or power of attorney was duly acknowledged. It is apparent from the record that Barrett objected to being made a party plaintiff. The trial court refused to abate the suit or require Barrett to be made a party plaintiff. While the contract was made before suit was filed, the clear import thereof was an assignment of an interest in the funds to be collected in the future, and was contingent upon such collection. Railway Co. v. Ginther, 96 Tex. 295, 72 S. W. 166; Railway Co. v. Vaughn, 16 Tex. Civ. App. 403, 40 S. W. 1065; Railway Co. v. Wood, 152 S. W. 487.

[2] It has been held that an attorney with a contingent interest in the subject-matter of a suit is not such as will make him a party to the suit requiring of him a bond for costs or to secure same. Railway Co. v. Scott, 28 S. W. 457. It has also been held by the Supreme Court that where an attorney had a contingent interest in the suit, who was the brother of the judge trying the case, the trial judge was not thereby disqualified, although such interest existed in the brother. Winston v. Masterson, 87 Tex. 200, 27 S. W. 768; Railway Co. v. Reeves, 35 Tex. Civ. App. 162, 79 S. W. 1099. Appellant cites the case of Hughes v. Mendoza, 156 S. W. 329. In that case it is held a one-third interest was transferred in the claim sued on, and that the attorneys could be made parties, and that

the plea in abatement was properly presented. The court therein says:

"Undoubtedly the transfer in this case to Patterson & Wallace constituted them joint owners with plaintiff of the cause of action herein sued upon, rather than the owners of a contingent interest in a possible future recovery."

It was held, however, in that case, as the attorney represented the plaintiff therein, they would be bound by the judgment therein rendered, and that the action of the court in overruling the plea in abatement was harmless, citing Bonner v. Green, 6 Tex. Civ. App. 96, 24 S. W. 835. We think the contract in this case, when considered in its entirety, evidenced the fact that Barrett had only a contingent interest in the future possible recovery, and that it is by its terms in the class with the contract mentioned in the case of Railway Company v. Ginther, supra. It was held in Wickizer v. Williams, 173 S. W. 288, where the plaintiff conveyed part of the land to the attorneys prosecuting the suit, that it was not error to refuse to make the attorneys parties to the suit over their objection, citing Bonner v. Green, supra. We think there was no error on the part of the trial court in refusing to make Barrett a party, but if there was error it was harmless for the reason under the showing in this record Barrett would be bound by the judgment rendered.

[3] The second assignment complains at the action of the trial court in overruling the first special exception to appellee's petition, to the effect that appellee did not show whether he was suing under the state or federal law, and that appellant is not informed by the petition under what law appellee is claiming. The petition alleges that appellant operated a line of railroad from Amarillo, Tex., to Tucumcari, N. M., and through Oldham county, Tex., appellee's place of residence, and that the injury of which complaint is made was received by appellee while he was employed in repairing appellant's roadbed and track so used, and that it was his duty, as one of the employés of appellant, to operate a certain car along the line of road for the purpose of carrying appellant's servants, together with their tools and the material for repairing the road in which appellee was then employed as a servant of the appellant, and that he was injured while thus employed.

The appellant answered that it was engaged in interstate and intrastate commerce, and that the appellee was employed to assist in repairing and maintaining its roadbed and track when injured, and that, if he had any cause of action, it was under the federal Employers' Liability Act of the United States, and not of the state of Texas. The appellant in this case cites us to Thornton's Employers' Liability and Safety Appliance Acts, pp. 32 and 33. The author in the note suggests that, if the pleadings do not show the plaintiff was employed in interstate commerce, when the evidence developed the fact

that he was, this would constitute a fatal variance, and, if the defendant by answer should set up the plaintiff was so employed, and this was proven, this would defeat a recovery, etc. The Supreme Court of the United States held:

"It is true the original petition asserted a right of action under the laws of Kansas, without making reference to the act of Congress, but the court was presumed to be cognizant of the enactment of the Employers' Liability Act, and to know that, with respect to the responsibility of interstate carriers by railroad to their employés injured in such commerce after its enactment, it had the effect of superseding state laws upon the subject. Second Employers' Liability Cases; Mondou v. N. Y., N. H. & H. R. Co. [223 U. S. 1] 32 Sup. Ct. 169 [56 L. Ed. 327, 38 L. R. A. (N. S.) 44]. Therefore the pleader was not required to refer to the federal act, and the reference actually made to the Kansas statute no more vitiated the pleading than a reference to any other repealed statute would have done." Railway Co. v. Wulf, 226 U. S. 570, 575, 33 Sup. Ct. 135, 137, 57 L. Ed. 355, Ann. Cas. 1914B, 134.

Chief Justice White of the Supreme Court, in the case of Grand Trunk, etc., v. Lindsay, 233 U. S. 42, 34 Sup. Ct. 581, 58 L. Ed. 838, Ann. Cas. 1914C, 168, said:

"It is true that to avoid the irresistible consequences arising from this situation it is insisted in argument that as no express claim was made under the Employers' Liability Act, therefore there was no right in the plaintiff to avail of the benefits of its provisions, or in the court to apply them to the case before it. But this simply amounts to saying that the Employers' Act may not be applied to a situation which is within its provision, unless in express terms the provision of the act be formally invoked. Aside from this manifest unsoundness, considered as an original proposition, the contention is not open, as it was expressly foreclosed in Seaboard Air Line R. Co. v. Duvall [225 U. S. 477], 32 Sup. Ct. 790 [56 L. Ed. 1171]."

Under the statute of this state in force at the time this case was pleaded, the allegations that appellant was engaged in interstate commerce and that appellee was working on its line in furtherance of such commerce will be taken as true, if not denied, which was not done in this case. Again, it is a familiar rule in this state that an omission in the pleadings will be cured by the allegation in the adversary pleading of the omitted matter. It was held in Railway Company v. White, 238 U. S. 507, 35 Sup. Ct. 865, 868, 59 L. Ed. 1433, that the admission in the replication that White was employed in interstate commerce cured the defect in the declaration. This holding was made in deference to the holding of the state court, which in matters of practice and pleading was binding on the Supreme Court. This court, in the case of Railway Co. v. Stalcup, 167 S. W. 279, held substantially that, when the petition showed the employé, when killed, was employed in interstate commerce, the allegation was sufficient to designate the statute controlling. A writ of error was refused in that case by the Supreme Court of this state, as well as by the Supreme Court of the United States. We also held that, when there was a shipment of cattle, shown

by the pleadings to be from Texas to Kansas, on a through bill of lading, the Carmack Amendment would apply, even though the case was apparently tried in the court below under the state statutes. Railway Co. v. Word, 159 S. W. 375; Railway Co. v. Meyer, 155 S. W. 309. Writs of error were denied in these last two cases by both the higher courts.

In this case the petition shows that appellant was a carrier railroad operating a line of road from Texas into New Mexico, and that appellee was injured while employed in maintaining this line of road in repair. The appellant alleges that it was so operating the road as an interstate commerce carrier, and admits appellee was so at work. It is not required, we do not think, when the facts are stated which themselves indicate under which statute the case should be tried, to specifically allege under which statute the court should try it. The federal statute is supreme, when the facts are presented which bring the case within the statute, and the court must try the case under the law. To require an employé to hazard his rights by requiring him in every case to allege that his case is under the state or the federal statute, under the penalty of losing if he fails to name the proper statute, would, in our judgment, be placing a burden on him which ought not to be imposed. When he alleges the kind of employment in which he was engaged and where employed, it occurs to us he has gone far enough. The allegation that a line of road runs from one state into another is prima facie, we think, an allegation that the road was engaged in interstate transportation. The fact that he was employed in repairing that line of road when injured, as a section hand thereon, will be sufficient to show such injury "while" employed in interstate commerce, if the law attached to such labor the character of interstate commerce.

[4] It is on the facts established a question for the court to determine whether his injuries were received while employed in interstate or intrastate commerce, and it will also be a question for the courts to determine which statute shall control.

[5] Two things must appear before the federal statute is paramount: First, that the railroad was engaged at the time in interstate transportation; and, second, that the employé was injured while employed in interstate commerce. Thus a yardmaster, who at the time of his injury was handling cars for intrastate shipment, would recover, if at all, under the state statute; but if while handling cars for interstate transportation, the federal statute will control. Railway Co. v. Behrens, 233 U. S. 473, 34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163; Railway Co. v. Rosenbloom (Sup.) 177 S. W. 952. A carpenter repairing a bridge over which

state and interstate shipments pass on a line of railroad, while carrying bolts with which to repair the bridge thereon, was injured on the track by a passing train. He was held by the Supreme Court to have been injured while employed in interstate commerce. Pedersen v. Railway, 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153. The holding in the case last cited rests apparently on the fact that the work of keeping such instrumentalities in a proper state of repair while thus used is so closely related to such commerce as to be in practice and legal contemplation a part of it. Practically the average employé would not know whether there were commodities in the car for out of state transit. This knowledge rests largely with the railroad; it alone in many instances knows the character of the freight. We believe the just rule to be, when the facts at the trial show the character of the commerce, the court should apply the law governing the case as made. The employé ought not to be required to allege that which is in the knowledge of the road. The time, place, circumstances, and the employment at which the servant is at work when injured will be sufficient to notify the road of the character of commerce in which the servant was employed. This assignment will be overruled.

[6] The third assignment is to the action of the court in permitting the question to be asked, and the answer of the witness Gruhlkey to the effect that the railroad track from Amarillo to the state line was not first-class road; that it was not ballasted, and in some places rough. The witness was introduced by appellant, and on direct examination had stated that the road had no track rough enough that a man would be in danger of losing a handhold on the car, and testified generally as to whether there were high or low places. The allegation was that in boarding the car appellee was thrown by reason of a rough place in the road. He also testified he observed a high point where he fell. The testimony objected to was elicited by appellee upon cross-examination. Under the circumstances of this case we think it was proper cross-examination (Railway Co. v. Porter, 156 S. W. 267); and under the issues it was material, and made so by the pleadings and other evidence.

[7] Without objection the witness stated the track was a little rough all along the way from Amarillo to the state line, and that every day some part of the track would have to be raised. This testimony was substantially the same as that objected to. This will render the testimony objected to harmless.

[8] The fourth assignment is to the action of the court in permitting the witness Gruhlkey, on cross-examination, to state that the motor could have been equipped with a self-starter, and that its cost would have been

about the price of the motor. The objection was there was no pleading authorizing such testimony, and that it was theorizing and speculating, and, as to the cost, it was immaterial to any issue in the case. The appellant introduced this witness, and on direct examination went into a detailed history and description of the various hand cars used by appellant and for the make of the motor in question, its construction, and how it started, etc. We think the issues of this case are whether the car, as then used by appellant, by pushing it to start, under such circumstances, was a reasonably safe instrumentality, and whether there was negligence in so using it; and from the fact that this appears under the circumstances to have been a legitimate cross-examination of the witness, we believe there was no such error shown by the testimony as would require a reversal.

[9] The fifth, sixth, seventh, eighth, ninth, tenth, eleventh, and twelfth assignments of error will be regarded as waived, for the reason that the statements under the assignments in appellant's brief do not show when the charges given by the court and here complained of were objected to, whether before or after the case was submitted to the jury. The objections made to the charges are not shown in the brief, or when called to the attention of the trial court. Appellant does not set out the bill of exceptions to the charge in its statement, but only refers to the record for such bill. Railway Co. v. Culver, 168 S. W. 514; Insurance Co. v. Rhoderick, 164 S. W. 1067.

[10] The fourteenth assignment: We believe the court properly refused the charge requested set up under this assignment. The charge sought to have the court instruct the jury that there was no duty to furnish the car with an apparatus for starting it without the necessity of pushing it before starting. It was the duty on the part of appellant to furnish a reasonably safe implement for the work required, and whether the appellant used ordinary care in doing so was a question for the jury under the facts of the case. Ordinary care may have required such a motor, under the facts of this case, or the pushing of the car in question may have been a reasonably safe instrumentality, and in furnishing it the appellant may have used ordinary care. As a rule, it should be left to the jury to determine whether the employer did all ordinary care required. Railway Co. v. Welsheimer, 170 S. W. 263, 266.

[11] The fifteenth assignment is overruled. This is simply a requested instruction that appellee assume all the risk ordinarily incident to the work and such as would arise in the use of the car in question. The court, in the last paragraph of his charge, gave the proper instruction on this subject, and in so far as the requested charge was the law the instruction of the court covered it.

The sixteenth and seventeenth assignments are overruled, for the reason that the issues here requested were substantially submitted by the court in issue No. 22.

The eighteenth assignment is overruled. We think the court properly refused to submit the issue whether appellant was engaged in interstate commerce. This is a question of law from proven facts. The fact that appellant transported freight (state and interstate over its line of road) was not a controverted fact. Both parties hereto substantially alleged it was so engaged. The allegation of appellant to that effect was not denied.

[12] Assignments 19 to 25, inclusive, assail the answers of the jury to the issues submitted, to the effect that appellant was guilty of negligence in the particulars alleged, and answering that appellee did not assume the risk. There are facts from which the jury could find that the instrumentality used was not reasonably safe, that is, that the car was not safe to board while in motion, and that appellee was working under the direction of the foreman, who required the car to be put in motion before boarding it, and that the motor could have been started by a crank without requiring the appellee to push the car by hand in order to start the motor before attempting to get on the same while in motion; that the track was rough, uneven, and in bad condition, and liable to cause the car to jump and to ride rough; that the appellee was inexperienced in the use of such an instrumentality, and knew nothing or but little of its use, and was not warned by appellant of the danger. We believe that, all these matters concurring in the injury of the appellee, the jury had some evidence to show that appellant was negligent therein, and that such negligence proximately caused appellant's injury.

[13] The jury found that appellee was guilty of contributory negligence and gave the per cent. that his negligence bore to that of appellants, and judgment was rendered accordingly. We do not think we should, as a matter of law, hold the facts conclusively established that the appellee assumed the risk. Under the facts we cannot say that appellee knew of the danger from the negligence of the appellant, or that he must necessarily have known of such danger, and that he would have known that the manner of doing the work was not a reasonably safe one, especially when his foreman was present directing the work. Bonnett v. Railway, 89 Tex. 72, 33 S. W. 334; Railway Co. v. Scott, 160 S. W. 432; Bennett v. Railway, 159 S. W. 132.

We have concluded the judgment of the trial court should be affirmed.

Affirmed.