[Civ. No. 10922.  First Appellate District, Division Two.—January 19, 1939.]

NICK DRAGICH, Respondent, v. COUNTY OF LOS AN-GELES (a Political Subdivision), Appellant.

[Civ. No. 10923.  First Appellate District, Division Two.—January 19, 1939.]

TOM MASON, Respondent, v. COUNTY OF LOS AN-GELES (a Political Subdivision), Appellant.

Everett W. Mattoon, County Counsel, J. H. O'Connor, County Counsel, and Gordon Boller, Deputy County Counsel, for Appellant.

Hanna & Morton, Arch E. Ekdale, J. F. Harvey, Sloane & Steiner and Sawyer & Cluff for Respondents.

Cossel Jacobs, J. M. Jessen, Gray, Carey, Ames & Driscoll, Paul M. Gregg, Robert M. Searles, William F. Kiessig and Pillsbury, Madison & Sutro, as *Amici Curiae,* on Behalf of Respondents.

SPENCE, J.—Two separate actions were brought to recover taxes alleged to have been illegally collected. Said actions were consolidated for the purpose of trial and the trial resulted in judgments in favor of plaintiffs. Defendant appeals from said judgments and the appeals are presented on one set of briefs.

There is no dispute concerning the facts and the sole question involved is whether the fishing boats owned by the plaintiffs were exempt from taxation under the provisions of article XIII, section 4, of the Constitution. Said section reads as follows: "All vessels of more than fifty (50) tons burden registered at any port in this State and engaged in the transportation of freight or passengers shall be exempt from taxation except for State purposes. . . . " Said section is the same in substance as the original section 4a which was adopted in 1914 and which was effective by its terms only until 1935. The present section was adopted in 1932 and it continued the same exemption until 1955. The background of said section is discussed in the briefs, but we need only call attention to the fact that the original section was adopted by the people in November, 1914, which was two years after the passage of the Panama Canal Act of 1912 and about two months after the opening to commerce of the Panama Canal. It is conceded that there were no fifty-ton fishing boats in California in 1914 and that fishing boats of that size first appeared here several years later.

The fishing boats of the plaintiffs were of the type known as "purse seiners" and they were enrolled and licensed at San Pedro. Each was over the specified tonnage. Said boats were engaged in fishing and were not engaged in any other business. They would leave San Pedro for various places where schools of fish might be found. After making their catches by means of the purse-seine nets, they would return to San Pedro or some other port and sell said catches.

It is appellant's contention that the fishing boats of respondents were not exempt as they were neither "registered" nor "engaged in the transportation of freight or passengers" within the meaning of the above-quoted section. In support of the proposition that respondents' boats were not "registered", appellant cites numerous authorities which discuss the distinction between "registered" vessels on the one hand and "enrolled and licensed" vessels on the other

hand. (*The Mohawk,* 70 U. S. (3 Wall.) 566 [18 L. Ed. 67]; *Huus* v. *New York & Porto Rico Steamship Co.,* 182 U. S. 392 [21 Sup. Ct. 827, 45 L. Ed. 1146]; *Bolinders Co.* v. *United States,* 11 C. Cust. App. 69; *Wheaton* v. *Weston Co.,* 128 Fed. 151.) While there may be merit in the point, we find it unnecessary to pass upon it here, as we believe it clear that respondents' boats were not exempt as they were not "engaged in the transportation of freight or passengers" within the meaning of said section.

It is at once apparent that said section was not intended to exempt all vessels of the specified tonnage but only those "engaged in the transportation of freight or passengers". This phrase must be given some meaning. If it be given the broad meaning contended for by respondents, it would only be necessary that the vessel be used for the conveyance of property or persons. But to give this phrase such meaning would be to render it meaningless as all vessels are used for the conveyance of either property or persons or both.

In discussing said phrase, respondents lay great stress upon the broad meaning accorded by the authorities to the word "transportation". In our opinion, the meaning of other words is of equal if not greater importance in determining the proper interpretation of said phrase. Furthermore the reading of the phrase as a whole is of paramount importance. The word "freight" has more than one meaning but it generally denotes property transported by a carrier from a consignor to a consignee. (Civ. Code, sec. 2110.) In one accepted sense, it means "the hire or compensation paid by anyone for the transport of goods . . . " (Webster's New Inter. Dictionary, 2d ed.), and when used to denote the property transported, it carries the definite implication that the transportation is for hire. A similar implication is found in the use of the word "passengers". A "passenger" is defined as "A traveler by some established public conveyance, as a coach, omnibus, steamboat, railroad train, etc." (Webster's New Inter. Dictionary, 2d ed.) Said definition implies carriage for hire and it further appears that the word "passenger" is quite generally used in contradistinction to the word "guest". (*McCann* v. *Hoffman,* 9 Cal. (2d) 279 [70 Pac. (2d) 909]; Restatement of the Law of Torts, sec. 490.) With these definitions in mind and reading the phrase as a

whole, we cannot escape the conclusion that the phrase "engaged in the transportation of freight or passengers" as found in said section means "engaged in the transportation of property or persons for hire". It is conceded that respondents' vessels were not so engaged and therefore they were not exempt from taxation by appellant. It follows from what has been said that the trial court erred in entering judgments in favor of respondents.

The judgments are reversed and the trial court is directed to enter judgment in favor of the defendant in each of said actions.

Nourse, P. J., and Sturtevant, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 20, 1939.